UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOSEPH CHURCH,<br><br>　　　　　　　　　Plaintiff,<br>　　v.<br><br>EXPEDIA INC., et al.,<br><br>　　　　　　　　　Defendants. | CASE NO. C18-1812JLR<br><br>ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO DISMISS THE CASE |

## I.　INTRODUCTION

Before the court is Defendants Expedia, Inc. ("Expedia"), EAN.com, LP, Travelscape, LLC, and Hotels.com L.P.'s (collectively, "Defendants") motion to compel arbitration and to either dismiss the case or stay it pending the completion of arbitration. (*See* Mot. (Dkt. # 19).)  Plaintiff Joseph Church opposes the motion. (*See* Resp. (Dkt. # 30-1).)  The court has reviewed the motion, the parties' submissions filed in support of and in opposition to the motion, the relevant portions of the record, and the applicable

//

law. Being fully advised,[1] the court GRANTS Defendants' motion to compel arbitration and DISMISSES this matter without prejudice.

## II. BACKGROUND

**A. Plaintiff's Reservation**

On June 4, 2017, Mr. Church used Reservations.com, which is not a party to this suit, to make a two-night hotel reservation at the Hyatt Regency Orlando ("the Hyatt"). (Compl. (Dkt. # 1) ¶¶ 46-47.) Mr. Church alleges that he paid a total of $641.97 for his reservation. (*Id.* ¶ 52.) Mr. Church further alleges that this payment was divided into a $14.99 service fee, a $518.30 room charge, and a $108.68 "Taxes & Fees" charge. (*Id.* ¶¶ 47, 52.) Mr. Church asserts that two payments appeared on his credit card: one charge appeared to Reservations.com for the service fee, and a separate charge appeared to Expedia for the room charge and the "Taxes & Fees" charge bundled together. (*Id.* ¶¶ 32, 35.) He further asserts that the service fee was paid to Reservations.com, the room charge was divided between the Hyatt and Defendants, and Expedia paid $67.97 of the $108.68 "Taxes & Fees" charge to appropriate governmental entities but "illegally retained" the $38.71 remainder. (*Id.* ¶¶ 30, 32, 52.) He alleges that whenever Defendants sell a room through Reservations.com, they inflate the "Taxes & Fees" charge beyond what is actually owed to any governmental authorities and retain the excess funds. (*Id.* ¶¶ 6, 52.) Mr. Church alleges that Defendants and Reservations.com

//

---

[1] No party requests oral argument (*see* Mot. at title page; Resp. at title page), and the court does not consider oral argument helpful to its disposition of the motion, *see* Local Rule W.D. Wash. LCR 7(b)(4).

were part of a fraudulent conspiracy to "deceive consumers into believing that they were paying a legitimate 'Taxes & Fees' charge." (*See id.* ¶¶ 22, 50, 74.)

B.   **The Terms of Service**

To complete his booking, Mr. Church had to click on a red "Complete Reservation" button. (Patel Aff. (Dkt. # 20-1) ¶ 3.) Next to that red button was the statement: "By clicking the 'Complete Reservation' button you agree to our <u>Terms of Service</u> and <u>hotel room cancellation</u> policy." (*Id.*) The words "<u>Terms of Service</u>" ("Terms") in that sentence were underlined and provided a hyperlink to the Terms. (*Id.*, Ex. A.)

The Terms set forth "the terms and conditions of bookings you make with us, including matters concerning pricing, payment, and dispute resolution." (*Id.*, Ex. B at 5.) A section on "**Dispute Resolution**" is prefaced with the following statement:

> **THIS SECTION HAS A SIGNIFICANT IMPACT ON YOUR RIGHTS ESPECIALLY WHEN IT COMES TO HOW DISPUTES BETWEEN YOU AND US GET RESOLVED.  PLEASE READ THIS SECTION CAREFULLY.**

(*Id.*, Ex. B at 7.) The Terms also states that the customer agrees "to resolve any dispute, claim, or controversy arising out of or relating to your use of our Site, this Agreement, our Privacy Policy or the breach, termination, enforcement, interpretation or validity thereof, or our relationship in connection with the Site or these or previous versions of this Agreement or our Privacy Policy ('Claim')" by contacting Reservations.com before taking further action. (*Id.*) If the Claim is not resolved in 60 days, "[a]ny and all Claims

//

will be resolved by binding arbitration," except certain claims that may be asserted in small claims court. (*Id.*)

C.     **Plaintiff's Prior Complaint**

Before the present suit, Mr. Church filed a similar putative class action based on the same Reservations.com hotel room booking in the District of South Carolina. (Powell Decl. (Dkt. # 20) ¶ 2, Ex. A (attaching First Amended Class Action Complaint filed on January 23, 2018, in *Church v. Hotels.com L.P.*, No. 2:18-cv-18 (D.S.C.) ("*Church I*"), Dkt. # 5) ("*Church I* Compl.").) Mr. Church alleged breach of contract, constructive trust, unjust enrichment, and conversion and misappropriation claims against two entities doing business as Reservations.com (the "Reservations.com Defendants"), and three of the four Defendants in the present suit. (*See Church I* Compl. ¶¶ 9-14.)

In *Church I*, the Reservations.com Defendants filed a motion to compel arbitration based on the arbitration clause in the Terms, and Mr. Church opposed it. (*See* Powell Decl. ¶¶ 3-4, Exs. B, C.) The court held that an agreement existed between Mr. Church and Reservations.com as to the Terms on the website. (*Id.* ¶ 6, Ex. E (attaching order) at 4-5.) The court further determined that all of Mr. Church's claims fell within the "broad scope of arbitrability" contained in the Terms, compelled arbitration, and dismissed the complaint as to the Resevation.com Defendants. (*Id.* at 6.)

The remaining defendants did not join in the Reservations.com Defendants' motion to compel arbitration and instead filed a separate motion to dismiss for lack of personal jurisdiction. *See Church I*, Dkt. # 23. Mr. Church voluntarily dismissed the

//

case without prejudice on August 27, 2018, before the court ruled on the remaining defendants' motion. (*See* Powell Decl. ¶ 7, Ex. F.)

**D.      Plaintiff's Present Complaint**

On December 17, 2018, Mr. Church, on behalf of himself and others similarly-situated, filed the present putative class action law suit, alleging (1) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(C)-(D); (2) conversion and misappropriation; (3) unjust enrichment; and (4) constructive trust. (*See* Compl. ¶¶ 62-128.) In his present suit, Mr. Church did not sue Reservations.com (*see generally id.*) and expressly does not challenge the service fee charged by Reservations.com (*id.* ¶ 5).

On February 25, 2019, Defendants filed a motion to compel Mr. Church to arbitrate his claims against them pursuant to the arbitration clause contained within the Terms on the Reservations.com website and to dismiss or stay his lawsuit. (*See generally* Mot.) Mr. Church opposes the motion. (*See generally* Resp.) The court now considers Defendants' motion.

### III.      ANALYSIS

**A.      Standards**

"Federal Rule of Civil Procedure 12(b)(3) provides for dismissal based on improper venue." *Brennan v. Opus Bank*, No. C13-94RSM, 2013 WL 2445430, at *3 (W.D. Wash. June 5, 2013). "'An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute.'" *Id.* at *3 (quoting *Scherk v.*

*Alberto-Culver*, 417 U.S. 506, 519 (1974)). Motions to enforce forum selection clauses may be brought under Rule 12(b)(3). *Id.* On a motion to enforce a forum selection clause, the plaintiff carries the burden of showing that the venue is proper. *Id*. Further, "[u]nder the ... standard for resolving motions to dismiss based on a forum selection clause, the pleadings are not accepted as true, as would be required under a Rule 12(b)(6) analysis." *Id*. (quoting *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996)).

The Federal Arbitration Act ("FAA") "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4)). Thus, the court must grant a motion to compel arbitration if there is a valid agreement to arbitrate and the dispute falls within the scope of that agreement. *Chiron Corp. v. Ortho Diagnostics Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

Here, there is no dispute that there is a valid agreement to arbitrate between Mr. Church and the Reservations.com Defendants in *Church I*. Indeed, the federal district court for the District of South Carolina so held, and Mr. Church has expressly accepted that ruling for purpose of this motion. (*See* Powell Decl. ¶ 6, Ex. E at 4-5; *see also* Resp. at 5 ("For purposes of this motion, Plaintiff accepts the holding of the South Carolina District Court that the arbitration clause in the Terms . . . is binding on him regardless of whether he read or was aware of the arbitration clause or any other part of the Terms.").) Thus, the issues here are (1) whether Defendants are third-party beneficiaries to that agreement so that the arbitration provision applies to the parties and Mr. Church's claims

here, and (2) whether Defendants may invoke the terms of the arbitration agreement under the doctrine of equitable estoppel. (*See generally* Mot. at 11-19; Resp. at 9-20.) Because the court finds in the affirmative on the first issue, it does not reach the second.

**B.     Third-Party Beneficiaries**

Defendants argue that they may enforce the Terms' arbitration provision as third-party beneficiaries of the agreement. (Mot. at 17-19.) Under Washington law,[2] a third-party beneficiary is entitled to enforce an arbitration clause if "both contracting parties . . . intend that a third-party beneficiary contract be created." *Postlewait Const., Inc. v. Great Am. Ins. Cos.*, 720 P.2d 805, 806 (Wash. 1986). Such a contract is created if "performance under the contract would necessarily and directly benefit" the third party. *Lonsdale v. Chesterfield*, 662 P.2d 385, 390 (Wash. 1983). "If the terms of the contract *necessarily require the promisor to confer a benefit upon a third person*, then the contract, and hence the parties thereto, *contemplate a benefit to the third person*." *Id.* at 389 (quoting *Vikingstad v. Baggott*, 282 P.2d 824, 825 (Wash. 1955)). "The fact that representatives of neither [party to the contract] subjectively intended to benefit the [the

//

---

[2] Mr. Cross maintains that Washington law applies to this issue. (*See* Resp. at 18 n.8 ("[T]his issue will be addressed under applicable Washington law . . . .").) Defendants likewise implicitly acknowledge that Washington law applies. (*See* Mot. at 18-19 (relying primarily on Washington law and *Geier v. m-Qube Inc.*, 824 F.3d 797 (9th Cir. 2016), which applies Washington law).) Further, Plaintiffs admit "the law in Florida and South Carolina is the same as in Washington." (Resp. at 18 n.8.) "[A] federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law." *Lazar v. Kroncke*, 862 F.3d 1186, 1194 (9th Cir. 2017) (quoting *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001)). Under Washington's choice of law rules, if there is no actual conflict of law between the states, Washington's substantive law applies. *See Woodward v. Taylor*, 366 P.3d 432, 438 (Wash. 2016) ("[B]ecause there is no actual conflict of law, Washington's substantive law applies."). Accordingly, the court applies Washington law.

non-signatory] is not determinative . . . ." *Id.* at 390. Further, "it is unnecessary that [the non-signatory] be cited in the Agreement by name." *Ege v. Express Messenger Sys., Inc.*, No. C16-1167RSL, 2017 WL 87841, at *3 (W.D. Wash. Jan. 10, 2017), *aff'd*, 745 F. App'x 19 (9th Cir. 2018) (citing *Wood Prods. Co. v. Tri-State Const., Inc.*, No. C04-2052Z, 2005 WL 1126928, at *6 (W.D. Wash. May 9, 2005)).

Here, the Terms explicitly acknowledge that Reservations.com's "affiliates" include "affiliated companies," "suppliers," and "partners." (Patel Aff. ¶ 5, Ex. B at 5.) Mr. Church acknowledges in his complaint that Defendants are "suppliers" of Reservations.com (*see* Compl. ¶ 2), and further acknowledges that "Reservations.com indicates on its website that it has a 'partnership' with Expedia" (*id.* ¶ 25). Further, the Terms explicitly state that Mr. Church "acknowledge[s] that the rates displayed on [Reservations.com] are a combination of the rates and fees charged by the service provider such as a hotel or hotel supplier and the service fee charged by us on our behalf." (Patel Aff. ¶ 5, Ex. B at 5.) Thus, by agreeing to the Terms, Mr. Church agreed that part of his payment could go to a hotel supplier—in this case, allegedly, Defendants. Indeed, this is the precise scenario Mr. Church alleges in his complaint when he states that one of the Defendants—namely, Expedia—charged his credit card directly for the combined room rate and "Tax & Fees" charge. (*See* Compl. ¶ 35.) It is hard to imagine a more direct benefit under a contract than a provision providing for the payment of money. *See Vencor Hosps. v. Blue Cross Blue Shield of R.I.*, 169 F.3d 677, 680 (11th

//

//

Cir. 1999) (concluding that a contractual intent for a payment to go to a third party confers a benefit creating third-party beneficiary status).[3]

In *Geier*, a customer allegedly subscribed to a mobile content provider's game, whose terms and conditions included an arbitration clause. 824 F.3d at 799. The customer sued certain billing aggregators, who served as intermediaries between the customer and the game company, alleging that the billing aggregators engaged in a scheme to subscribe Washington customers to premium text message services. *Id.* The Ninth Circuit noted that, under the mobile content provider's terms and conditions, the customer waived all claims against any of the mobile content provider's "suppliers" or anyone other than the mobile content provider related to the service. *Id.* at 800-01. The Ninth Circuit concluded that because the terms and conditions conferred a benefit on the mobile content provider's suppliers, the suppliers were intended third-party beneficiaries under Washington law and were accordingly entitled to enforce the arbitration clause contained in the terms and conditions. *Id.* at 801. Similar to the terms and conditions in *Geier*, the Terms at issue here expressly limit liability for Reservations.com's "affiliates" and "suppliers," like Defendants, for certain categories of damages and certain claims. (*See* Patel Aff. ¶ 5, Ex. B at 7.) Thus, in addition to providing for payment as discussed above, the Terms also confer this additional benefit on Defendants. (*See id.* ¶ 5, Ex. B at 5, 7.) Accordingly, based on *Geier*, the court concludes that Defendants may enforce the

//

---

[3] In *Vencor*, the Eleventh Circuit applied Florida law. 169 F.3d at 680 n.4. Mr. Church acknowledges that the law in Florida and Washington is the same on this issue. (Resp. at 18 n.8.)

Term's arbitration clause. *See also Bay Bank, a Div. of Cowlitz Bancorp v. f/v, ORDER OF MAGNITUDE*, No. C05-5740RBL, 2006 WL 691812, at *1-2 (W.D. Wash. Mar. 10, 2006) (denying motion to dismiss a demand for arbitration because defendants/third party plaintiffs "were expressly made beneficiaries of some of [the agreement's] provisions, namely and specifically the indemnity provision," rendering them third-party beneficiaries with rights to enforce the arbitration provision).

Mr. Church never attempts to distinguish *Geier*. (*See* Resp. at 18-20.) Instead, he contends that Defendants cannot be third-party beneficiaries because he never "consciously provid[ed] some benefit to [Defendants] (or any other unknown, unnamed subterranean intermediary)." (*See id.* at 19-20.) The test for "intent," however, in this context is objective: "If the terms of the contract necessarily require the promisor to confer a benefit upon a third person, then the contract, and hence the parties thereto, contemplate a benefit to the third person . . . ." *Perry v. HAL Antillen NV*, No. C12-0850JLR, 2013 WL 2099499, at *13 (W.D. Wash. May 14, 2013) (quoting *Lonsdale*, 662 P.2d at 389). Thus, whether Mr. Church "consciously" intended to confer a benefit on Defendants is irrelevant. The court must look to the terms of the contract itself, which as discussed above confers such benefits on Defendants.

Mr. Church also complains that the Terms refer only to unknown "suppliers" and "partners" and do not expressly name Defendants. (Resp. at 19.) However, Defendants are third-party beneficiaries because performance under the Terms "required the parties to confer a benefit upon Defendant[s]; it is unnecessary that Defendant[s] be cited in the [a]greement by name." *Ege*, 2017 WL 87841, at *3 (citing *United Wood Prods. Co.*,

2005 WL 1126928, at *6); *see also Boise Cascade Corp. v. Pence*, 394 P.2d 359, 361 (Wash. 1964) (concluding "that identity of the third-party beneficiary need not be known to promisor or promisee at the time the promise is made as a precondition to enforcing the promise if the third-party beneficiary can be identified when the promise is to be performed"); 25 Wash. Prac., Contract Law & Prac. § 12:2 at 370 (3d ed. 2014) ("It is not essential to the creation of a right in an intended beneficiary that he or she be identified when a contract containing the promise is made.").

Finally, Mr. Church's contention that the Term's arbitration clause applies exclusively to claims between Resevations.com and its customers does not withstand scrutiny. His sole basis for this argument is a five-word phrase in the "Dispute Resolution" section of the Terms, which states: "This section has a significant impact on your rights, especially when it comes to how disputes between you and us get resolved." (*See* Resp. at 20 (citing Patel Aff. ¶ 5, Ex. B at 7; *see also* Patel Aff. ¶ 5, Ex. B at 5 (defining "us" as Reservations.com).) Given that the term "between you and us" appears in the context of a phrase that is qualified by the term "especially," the term "between you and us" does not limit arbitrations to signatories, even on its face.

Moreover, courts must ascertain the parties' intent "from reading the contract as a whole." *Perry*, 2013 WL 2099499, at *19. Here, Mr. Church disregards substantive language in the "Mandatory Arbitration" provision itself, which states: "Any and all Claims will be resolved by binding arbitration." (Patel Aff. ¶ 5, Ex. B at 7.) The Terms defines "Claims" broadly to include "any dispute, claim, or controversy arising out of or relating to your use of [Reservatons.com], this Agreement, our Privacy Policy or the

breach, termination, enforcement, interpretation or validity thereof . . . ." (*Id.*)  Courts "interpret 'arising out of or relating to' broadly when the phrase is within an arbitration clause." *Wash. Tr. Bank v. Trigeo Network Sec., Inc.*, No. 30389-6-III, 2012 WL 6163179, at *3 (Wash. Ct. App. Dec. 11, 2012) (unpublished) (citing cases); *see also McClure v. Davis Wright Tremaine*, 890 P.2d 466, 467 (Wash. Ct. App. 1995) ("An arbitration clause which encompasses any controversy 'relating to' a contract is broader than language covering only claims 'arising out' of a contract."); *Geier*, 824 F.3d at 800 (finding third-party beneficiary status for purposes of determining arbitrability despite language in the agreement that "any arbitration will be limited to the dispute between [customers] and the Company").  Reading the contract as a whole, and given the broad interpretation courts lend to the terms "arising out of or relating to," Mr. Church's claims against Defendants fall within the definition of the term "Claim" and are subject to the Terms' arbitration clause. [4]

//

//

//

---

[4] The case authorities upon which Mr. Church relies are distinguishable.  The agreement in *Mintno v. Ralston Purina Co.*, 47 P.3d 566 (Wash. 2002), expressly disclaimed all rights to third parties.  *See id.* at 561 ("This Agreement is not intended to confer upon any non-party any rights or remedies hereunder.").  Here, the Terms expressly confers third-party benefits to Defendants.  (*See* Patel Aff. ¶ 5, Ex. B at 5, 7.)  In addition, *Lawson v. Life of the South Insurance Company* is distinguishable because the arbitration clause at issue there was not mandatory.  648 F.3d 1166, 1171 (11th Cir. 2011).  "On its face, the . . . agreement grant[ed] only 'you' (defined as [the plaintiff]) and 'we' (defined as the car dealership, [the bank], and their assignees) the right to elect to arbitrate."  *Id.*  Because the defendant was neither a "you" nor a "we," and the face of the arbitration clause did not show an intent to give an unmentioned party the right to compel arbitration, the court declined to do so.  *Id.* at 1171-72.  As discussed above, viewing the contract as a whole, the Terms at issue here cannot be read so narrowly.

## C. Dismissal

The court concludes that Defendants are third-party beneficiaries of the Terms, and Mr. Church's claims fall within the scope of the Terms' arbitration provision. *See supra* § III.B. Defendants ask the court to dismiss the action or, in the alternative, stay the litigation pending the arbitration of Mr. Church's claims. (Mot. at 19-20.) Under Ninth Circuit precedent, the court "may either stay the action or dismiss it outright when, as here, the court determines that all of the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014). Because the court finds that arbitration is the proper forum for all of Mr. Church's claims, the court grants Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3) in favor of arbitration and without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' motion to dismiss in favor of arbitration (Dkt. # 19).

Dated this 10th day of June, 2019.

JAMES L. ROBART
United States District Judge